NALL v. SCOTT.

5-2295                              342 S. W. 2d 418

Opinion delivered January 30, 1961.

22

*J. B. Milham* and *C. Van Hayes,* for appellant.

*Wright, Lindsey, Jennings, Lester & Shults,* for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Homer Nall, a veteran of World War I, was adjudged incompetent by the Pulaski County Probate Court in 1931. The Commercial National Bank of Little Rock was subsequently named guardian. On February 15, 1957, Nall, while operating his own vehicle, was involved in an automobile collision with a car owned and driven by Mel L. Scott, Jr., appellee. Appellant instituted suit in the Circuit Court of Pulaski County for property damage and personal injuries; following the filing of an answer and counterclaim by appellee, the case was tried by the court, sitting as a jury, on August 5, 1958. On August 7th, the court directed a letter to counsel, finding that Scott was liable, and awarding Nall $72.83 for property damage and $250 for personal injuries.[1] Judgment was accordingly entered on September 2nd for $322.83. On September 4th, Nall, pursuant to a petition filed by his guardian, was found to be of sound mind, fully competent of attending to his business affairs, and "fully restored to all the rights and privileges of a competent person of sound mind and disposing memory * * *." The order recites that Nall, D. J. R. McDermott, Chief Attorney for the Veteran's Administration in Little Rock, and E. J. Risley, Vice-president and Trust-Officer of the Commercial National Bank, were all present in open

---

[1] The Court stated: "The proof indicates that there was damage to the plaintiff's car and that he sustained a measure of personal injury. The only definite proof of damages is the amount of $72.83 which was spent in repairs to the plaintiff's vehicle. There is no evidence regarding medical expense incurred by the plaintiff or any that might reasonably be expected to be incurred in the future. Absent, also, is proof of pain and suffering."

court. Following the adjudication of competency, Nall went downstairs and met his attorney, who had handled the litigation for him. St. Paul Fire & Marine Insurance Company, insurer of the car operated by Scott, had issued its draft in the amount of $322.83 on September 2nd, payable to Nall and his attorney. According to the testimony, on meeting downstairs, Nall endorsed the draft, and the attorney then gave his personal check to Nall in the amount of $239.42, and retained the insurance check to deposit in his own account. On the reverse side of the company check, immediately above appellant's signature, appears the language:

"The payee(s) by endorsement below accept(s) and agree(s) that this draft constitutes settlement in full of the claim or account described on the face hereof and that the company is subrogated to all rights and causes of action to which it is entitled under the said policy by reason of this payment."[2]

On April 30, 1959, Nall, through present counsel, filed a motion in the Pulaski County Circuit Court to vacate and set aside the judgment against Scott, alleging that he (Nall) was incompetent during the entire Circuit Court proceedings. Counsel for Scott responded, denying that Nall was entitled to have the judgment set aside, and the Response was subsequently amended with the allegation that "defendant verily believes that it is the intention of plaintiff, if said judgment is set aside, to file another action against defendant, based upon the cause of action referred to above,"[3] and it was asserted that the draft and language thereon constituted a release and "by accepting said payment and assenting to the contractual terms set out above, plaintiff is barred from asserting any cause of action against defendant arising out of the events which occurred on February 15, 1957, referred to above and also referred to on the face of

---

[2] The face of the draft also recites that the $322.83 is "in full settlement of the account or claim set forth below. *M. L. Scott, Jr.*"

[3] According to a statement by counsel to the court, a suit was instituted in Grant County subsequent to the filing of the pleadings in this case, and some five or six weeks prior to the hearing on appellant's motion to vacate the judgment.

said draft. Defendant is, therefore, entitled to a declaratory judgment pursuant to Arkansas Statutes, Sec. 34-2501 through Sec. 34-2512.'' Appellant responded to the plea for declaratory judgment by asserting that he did not accept the sum of $322.83 in settlement for his cause of action; that he had been adjudged incompetent in 1928,[4] and continued incompetent until September 4th, 1958, and was accordingly unable to employ any attorney to represent him prior to that time, and that fraud had been practiced upon the court. The court found that the original action against Scott should have been brought by the Commercial National Bank as guardian of Nall, and that the judgment rendered on September 2nd should be vacated because of the failure to proceed in the name of the bank. The court, however, further found that ''defendant is entitled to a judicial declaration that plaintiff's cause of action is barred by a release executed by plaintiff at a time when he was competent to transact business on his own behalf and by the ratification by plaintiff at a time when he was mentally competent to transact business on his own behalf of a prior settlement of his cause of action against defendant.'' In accordance with this finding, the court held that Nall ''be and he is hereby barred from asserting the cause of action aforesaid against defendant and defendant be and he is hereby barred from asserting the cause of action contained in his counterclaim herein against plaintiff and that plaintiff's original Complaint and defendant's original Counterclaim be and they are hereby dismissed with prejudice: * * *.'' From such judgment, comes this appeal.

Appellant first asserts that the draft involved was issued by St. Paul Fire & Marine Insurance Company, but there is no evidence that Scott took any part in payment of the judgment; that there is no law authorizing a declaratory judgment to be sought by a third party, i. e., Scott was the only one that could seek such a judgment. Of course, the question of whether the insurance

---

[4] Both the 1931 and 1928 dates are used in appellant's brief, and the record does not reflect which is correct.

company could act as agent for Scott in obtaining the release, is dependent upon their contractual relationship. This might, under some circumstances, be a proper question for the insured to raise, but Scott has not seen fit to deny that the company had authority to act in his behalf in obtaining the release. As far as the petition for Declaratory Judgment is concerned, the record reflects that same was filed by Scott, though the attorney filing it was one of the attorneys for St. Paul. Likewise, this attorney, according to the record, represented Scott in his original counterclaim. We find no merit in this contention.

Appellant's principal contention is based on alleged fraud. In this argument, appellant "blankets in" those who had any connection with the lawsuit, or a connection with the guardianship proceedings, viz., the attorney who obtained the judgment for Nall, the trust officer of the bank, one of the attorneys for the Veteran's Administration who handled Nall's file, and the attorney who represented Scott and the insurance company, it being charged the four colluded in obtaining the Probate Court order, and appellant's signature on the draft.[5] Just why these men were so intensely interested in persuading Nall to acecpt a small amount of money is not shown by appellant, or indicated by the record. There is not one iota of evidence to support any charge of fraud. As far as the Veteran's attorney is concerned, the record reflects that Nall's guardianship, along with hundreds of others, was under his supervision. His testimony was simply to the effect that Nall had related to him the facts of the accident in a coherent manner, and that Nall appeared

---

[5] In his argument, appellant asserts that it amounted to gross fraud for these men "to act together in procuring a Probate Court order with the sole intention of presenting to appellant, Homer Nall, the judgment issued by the Insurance Company which they were representing and in only minutes after the order was granted, present Nall with the insurance check, obtain his signature thereon, and in delivering the check advising him that it was only for his share of the judgment, and in failing to explain to him that he would be cancelling his right to bring a suit for damages sustained by him against Mel L. Scott; in failing to advise Nall such check was in satisfaction of the Mel Scott injuries; ***." Further, that appellant's attorney pretended to be acting for appellant "when in fact he was acting against the interest of Nall."

to be entirely aware of what he was doing. The attorney testified that Nall was admitted to the hospital on June 6, 1958, and was dismissed on July 8, 1958, and that he became acquainted with Nall shortly after the discharge. The latter would visit his office once or twice a week, and it was during that period of time that he definitely concluded that Nall was competent to transact his own business. E. J. Risley, trust officer of the bank, testified that Nall had discussed the litigation with him, and that he appeared to be entirely familiar with the law suit; that Nall frequently called to check his bank balance, managed his rural home and farm, and had been, for a considerable period of time, in view of the witness, competent to transact business. He stated that Nall went to the VA hospital in June, and as a result of that hospitalization, the Veteran's Administration advised that Nall was competent.[6] Risley accompanied Nall to the Probate Court on September 4th (which was not only proper, but highly desirable, since the petition to restore competency had been filed by the guardian bank). The witness identified Nall's signature on the draft, and further testified that Nall had previously informed him that he had won the judgment; that appellant was well satisfied with it, and was very complimentary of the attorney who handled the litigation for him.

The original attorney for appellant testified that Nall came to his office and retained him; that he did not know Nall was incompetent until a short time before payment of the draft, and after obtaining this information, it was agreed that Nall would not be paid until his disability was removed. The attorney stated that he waited on the first floor of the courthouse until after the Probate Court had entered its order declaring appellant competent, and that Nall said, "I have got it, here it is," and handed him the copy of the court's order; that he then gave Nall a personal check for the amount of money

---

[6] Dr. Lewis Cohen, Chief of Neurology and Psychiatry Service, stated by letter, which was filed with the Probate Court, that Nall was examined by him on several occasions and received psychological testing from the clinical psychologists during this period, and, based on these examinations, tests, and past history of the patient, Dr. Cohen was of the opinion that Nall was competent.

due appellant, and subsequently deposited the draft in his own account. The personal check, in the amount of $239.42, was introduced into evidence, and showed Nall's endorsement. The witness stated that appellant appeared competent at all times. "I think he was perfectly sane, a perfectly sane man, and knew more about the lawsuit than I did."

Appellant points out that the money was paid to Nall only a few minutes after he had been declared competent, but we fail to ascertain the relevance of this fact. There is no waiting period after an adjudication of competency before one actually becomes competent. The parties met in the court at that time apparently by pre-arrangement, and in fact, Nall was only adjudged competent on September 4th because he had *previously* been so found by the proper officials of the Veteran's Administration.

Appellant argues that the draft could not serve as payment of a void judgment. The trial court did not hold that the draft constituted payment of the judgment, but rather held that the execution of the draft amounted to a release of plaintiff's cause of action. We think the language on the back of the draft, appearing directly over appellant's signature, unquestionably constitutes such a release. As stated in 76 C. J. S., § 5, p. 631:

"No particular form or set of words is necessary to constitute a release, provided the contract is complete, the intention of the releasor to release is manifest, and the parties are sufficiently described to identify them. The release need not be in an instrument separate from the obligation released, * * *."

The evidence herein set out on behalf of appellee was not denied by any person, including appellant, who did not testify. We hold there was substantial evidence to support the judgment rendered by the court.

Affirmed.